Your Honors, the third case of the morning called 209-1287, 1st Bank v. Unique Marble & James Gallo S&H has been up to the creditors of Unique Marble. On behalf of the Avalon, Mrs. Marie L. Nienhuis, and on behalf of the Avaline, Mr. John H. Boyd. Is it Nienhuis or Nienhuis? Nienhuis. That's German? It's Dutch. Okay, that's close enough. You may proceed, ma'am. May it please the Court. My name is Marie Nienhuis, and I represent James Gallo, not individually, but in his capacity as assignee for the benefit of creditors of Unique Granite & Marble. We're asking the Court to conduct a de novo review and reverse the decision of the lower court granting summary judgment in favor of 1st Bank. We do so because we believe that there was an error of law committed in that Mr. Gallo, the intervener, was entitled to be paid his reasonable fees and expenses of the administration of the assignment that he was engaged in from the proceeds of the assets he liquidated. We believe that there was an error of law in that 810 Illinois Compiled Statutes section 9102 sub 52 does not turn the intervener or any receiver, assignee, or trustee into an actual lien creditor of an entity. We believe so that Mr. Gallo's fees should have been paid from the assets that he liquidated under the valid assignment for the benefit of creditors. Assuming there was an error of law, how would you measure damages? Your Honor, the fees that were submitted to be paid totaled $35,000. These were the fees and expenses that had been incurred by the assignee up to the point in time that the assignee received notice from the bank. No, my point is that you gave me a number. I want to know how you came up with that number. Certainly, Your Honor. Those were the actual fees and expenses that had been incurred by the assignee during his administration. What is an actual fee? Is that based upon a contingency percentage? Is it based upon an hourly rate times hours? And if it's based upon an hourly rate, who agreed to the hourly rate? It is an hourly rate, Your Honor, and it was contained within the assignment document. And that's particularly why it was contained within the trust agreement that was entered into between the assignee and the debtor itself. However, we're asking the court, if it were to reverse the decision of the lower court, to remand it to the lower court for determination of the reasonableness of those fees. Why would a third party, because that's what I gather is happening, maybe I'm wrong, but why would a third party, the secured creditor, be liable for these fees? These are the actual fees, the costs of the administration of the estate, which benefited all of the creditors of the entity, Unique Marble and Bank. No, what I mean is why would a party not, why would an individual or an entity not party to a contract be bound by the contract? Notice is, under the common law in Illinois, assignments for the benefit of creditors are created so that the assets of an entity that's financially troubled, such as Unique Marble, can be liquidated. And the fiduciary that is appointed to serve as the person liquidating these assets is entitled to their fees and expenses. And case law that's still valid in Illinois says that those fees and expenses can get paid ahead of any other claims in the estate itself. When you say any other claims, you're talking about any other claims including secured creditors? That's correct, Your Honor. The case that we cited, the Hoonan case, speaks to that point exactly. You're telling me that the law is that if a debtor enters into a contract with an individual or entity and assigns the assets there to, that that in some way can diminish or subvert the lien that a secured creditor has on the assets? What the assignee is actually doing, Your Honor, is doing a service for that creditor as well. How are they doing a service for the creditor? They're gathering the assets and liquidating them so that the proceeds can be paid in accordance with the priorities that are existing. If I'm a secured creditor and I have a mortgage on a piece of real estate, how do you accumulate this real estate other than through foreclosure? Or are you telling me that you as the assignee now have title and now you're going to give it to the secured creditor and it won't cost the secured creditor the cost of litigation, foreclosure?  But you're not asking for the benefit of the decreased cost of collecting the judgment or satisfying the judgment, are you? You're talking about an hourly rate fee based upon an agreement between the debtor and the assignee. That's correct, Your Honor. And the notice of the agreement is provided to all of the creditors in an assignment for the benefit of creditors. In fact, First Bank, the plaintiff in the action, did receive notice that the assignment had begun and that the intervener's services were going to be started. At any time, the secured creditor or any secured creditor could tell an assignee, stop, I want to recover my collateral and liquidate it myself. Was the amount of the secured creditor's lien greater than the amount of assets that were turned over to the assignee? I believe so, Your Honor. Then, in essence, when the property was assigned to the assignee, was it not assigned to the assignee who had a responsibility to turn over the assets to the secured creditor and to no one else? And that is exactly what was happening, Your Honor. As the assignee was liquidating the assets, and in point of fact, what the assignee was doing was finishing up projects that this company still had to create some accounts receivable. And proceeds then were paid to First Bank throughout the assignment up until the point that the assignee was notified that the secured creditor wished to take over those duties of liquidating the remaining assets. Now I have two questions, and I'll ask the follow-up that I got from Justice McClaren first. Under this trust agreement and the notice given to First Bank, First Bank has no statutory obligation because there's no statute governing this at the present time. So is there any common law obligation to accept or reject that trust agreement in a timely fashion? Not that I'm aware of that there's any obligation on the part of the secured party. Other than the Hooven case in which the Supreme Court of Illinois indicated the issue there was secured creditors objecting to the payment of an assignee's fees ahead of their claims. The court recognized that they had notice of the assignment and could have at any time notified the assignee to stop his or her efforts. They did not do so, and the court found those fees and expenses appropriate and said that they could be paid first. And now ultimately in this particular case, about what, seven to nine months passed between the notice and the time that First Bank comes forward and says, oh, wait a minute. You know, they serve their citations without giving notice to your client. Then they come in and say, we're taking it over. So about nine months of work had been accomplished at that time? I believe that's correct, Your Honor. The notice was given mid-18th, 21st of November, 08. And it was around April, I believe, that Mr. Gallo, the assignee, received notice that a citation had been served upon the corporation. And it had never been served upon him. Nonetheless, there had been communication going on between the bank and Mr. Gallo. In fact, he had been transmitting funds to them as he liquidated assets. Now, when you started your remarks, you said that Mr. Gallo did not become a lien creditor by – okay, and why not? Your Honor, the statute upon which First Bank relies is not intended to bestow – I'm sorry. It's not intended to bestow a security interest in an assignee, a receiver, or a trustee. In fact, that particular definitional statute is a means of giving a benefit to those fiduciaries that have duties to liquidate assets and then distribute them to the various creditors of a particular debtor. What it does is say that as of a particular point in time for the assignee – it's the date of the assignment for receiver, probably appointment as well, and a bankruptcy trustee at the date of the filing of the petition – gives them a clear date in which to say at that point in time, anyone who is properly secured, I will treat as a secured creditor. If anyone tries after that point to perfect a lien or a security interest, you're out of luck. This is the cutoff date. And so, therefore, the statute doesn't really make the assignee into a lien creditor. It merely bestows upon an assignee the benefits of being one so that the assignee can do his or her job as in distributing the assets, such as what happened in this case. The assignee does take these assets, as a receiver or a trustee does, subject to any properly perfected security interests up to the date they become the fiduciary. And at that point, they're able to know who they distribute proceeds to in full and those who may only get a pro rata distribution after a secured creditor is paid in full. Your client is asking not only for $35,000 and about $841 in fees, but he's also asking for the give or take $40,000 already paid. No, Your Honor, and I'm not quite sure where that came from because that is not what is being asked. It's really only the remaining fees and expenses that the assignee had incurred up to that point in time when the secured creditor said, please stop your efforts. We're not looking to get anything beyond that point in time because that's when the secured creditor exercised his rights. I did see in the appellee's brief that they mentioned, but that clearly is not our intent. We're not trying to get back anything. Okay, so that was not a request and any pleading in this case? No, Your Honor. Okay, all right. Thank you for the clarification. Certainly. Does quantum merit or unjust enrichment have any application here? Yes, Your Honor, I believe it would. Obviously, the assignee did perform services that were of value to the bank. It liquidated assets. It sold the inventory that was still remaining at the company, and those proceeds then were distributed or paid to First Bank. Those were the same kinds of expenses that the bank would have had to itself incur had it taken over the process of liquidating the assets even earlier, and perhaps they might not have even gotten as much recovery as they did. It's difficult for us to say at this point in time, but definitely there, I think, are issues of quantum merit involved because the assignee did provide some value to the bank in doing the job for it that the bank would have had to have done itself had it decided to liquidate its own collateral. When an assignee of this nature takes over, and you mentioned that there might have been some receivables out there to be collected, but if there were jobs out there that needed to be completed to bring in some money, does the assignee walk in the door at, say, the marble quarry and say, I'm trying to do this on behalf of the creditors, you're going to get paid for this marble we're going to buy, or do they only use the inventory that's left? Typically, they're only going to use what's left. The assignee is not going to operate the business to incur new expenses, just merely to wind up to maximize the value of the outstanding projects that might be there, unless for some reason there would be value in doing so, but that would be atypical. Is there anything in the record that indicates how Mr. Gallo proceeded? There was documentation shared with the bank. I don't know how specific the record got as to those types of issues, but certainly the records of the company are available if it becomes an issue at some point in time. If we were to reverse here, what exactly would you be asking for? What is the remedy that you're seeking? Your Honor, the remedy that we're seeking is to obviously reverse the granting of summary judgment, but to remand the case to the court. We've asked for an entry directing the court to conduct a hearing as to the reasonableness of the fees that have been sought by the assignee. Mr. Gallo has invoices, has bills equaling about $35,000, but because this has become an issue, we submit that this should still go before the trial court for a determination as to the reasonableness of those fees. And so we would ask that this case be remanded to the trial court to conduct that, and should that be determined, let's assume that the $35,000 is determined to be reasonable, that then the bank would be asked to disgorge the proceeds that they've already taken to Mr. Gallo for the services that he provided prior to their notification. I don't know if my concerns are substantial, but I like the term reasonable compensation rather than reasonable fees because the bank did not enter into a contract, or if it did, it was by silence. And typically, the judge is going to determine fees. It's going to be, in my mind, either a contingency fee or it's going to be an hourly fee. And to my knowledge, you haven't presented any evidence that the bank ever agreed to either a contingency fee or hours and rates, which means that either you're talking unjust enrichment, i.e., you save or your client saved them $50,000 in expenses and attorney's fees, in which case maybe your client is entitled to $50,000 instead of $35,000, or a quantum error, which says essentially the same thing. I understand, Your Honor. Who actually retained the assignee? He had been engaged by the debtor, Unique Marble, prior to the assignment, to actually assist them into looking for refinancing. When that was not possible, it was determined that going the route of an assignment for the benefit of creditors was the best way to maximize the value of the assets. Thank you. Any other questions? Not right now. Thank you. I have an opportunity for rebuttal. Thank you. Mr. Boyd, you may proceed. May it please the Court, Counsel? John Boyd, appearing on behalf of the Appellee First Bank, Your Honor. Your Honor, this case is about, in a macro sense, the certainty and economic efficiency that the UCC is grounded in. In a micro sense, it's about the priority determination that resulted from the UCC's application in this case. The appellee is a perfected, secured creditor. The appellant, as we set forth before the Court, is a lien creditor. The UCC is clear in designating that when a party possesses a perfected, secured security interest in collateral prior to the time of the lien creditors, in this case an assignee for the benefit of creditors, getting their lien creditor designation, the perfected, secured security interest holder takes before, and if there's anything left over, depending on the rest of the apportionment, the lien claimant would take after that. But your client knew of the assignment. Your client received a benefit from that assignment in about, well, there's maybe $40,000 of actual secured and another, what, $25,000 in some rent or mortgage payment that's somehow connected to unique, and only then did your client say, oh, wait a minute, we're going to take it over. You took advantage of the assignment, and that advantage should be subject to some compensation, shouldn't it? Your Honor, the benefit that was provided in this case was provided to the debtor. But you got the $40,000, not your client. My client received the $40,000 as a result of the services that the appellant provided to the debtor. And why I say that is a couple reasons. The UCC provides that an assignment for the benefit of creditors is a lien claimant. It provides also that we would take, and if they just took that, the $40,000, the $35,000, they'd be subject to conversion first. And Ms. Neinheif has also admitted that no matter what in this instance, the only party who was going to get anything, and it's also in her brief, was the bank because of their perfected, secured interest. The services provided were there. They did get a lien then against the debtor. That would under the UCC dictate comes after a perfected, secured creditor. Even in all of the bankruptcy cases that are cited, that lien creditor comes, if it's even a judicial creation in those cases under the Bankruptcy Trustee Act, and then as it applies to each state statute, UCC takes after a secured, or excuse me, a perfected, secured creditor. Counselor, can I throw something at you, please? Let's assume that there were gold ingots or platinum ingots, and you decided or your client decided that they wanted to take possession thereof. So they contacted Dillons or Wells Fargo and had an armored truck or armored car go and pick up the goods and deliver it to the client. It seems like you're arguing that your client doesn't have to pay the armored car company because your client's a secured creditor, and therefore, since these or the ingots are assets, you're the secured creditor and Dillons is not because this relates to the assets. Now, your response is going to be, yeah, but I have a contract with Dillons, correct? My response would be we asked for Dillons to provide that service, Your Honor. Okay. So you're suggesting, I'm sorry. And if you, why didn't you ask Mr. Gallo to do something on your behalf, at least for a period up until the time you said we no longer want your services? A two-part response, Your Honor. Your Honor, what we did when we got notice, and it is part of the record, is we began judicial proceedings 30 days later on December 23rd. That's when we got a confess judgment and started moving in court. In addition, I think, and it's not to pose a hypothetical, but I think it gives some context as well. The trial court judge had made the hypothetical, if I have a home and you come and I am outside and I'm drinking my coffee and you paint my house and I see you doing it, but I don't object, do I need to pay you? Well, possibly. It's my home. Does the mortgagor lose its right of first priority if they knew that they were painting that house even though they had a lien because the debtor or the mortgagor did not object? There is no affirmative step. We took our affirmative step in the courts. So you're saying – Well, counsel, with your analogy, what if it was a roofer who preserved the integrity of the home? There's a hole in the roof. It's pouring down rain. A roofer comes along, fixes the roof, and preserves the home. Isn't that more akin to what Mr. Gallin did here? It would only – I mean, isn't there – there was a benefit, clearly, put a roof back on the house, keep the rain out, keep the snow out? I mean, to use your analogy. So you would say that the bank doesn't owe that roofer anything? Too bad, so sad, it was my house to begin with? I would say that the owner of that home, not the mortgagor, does owe that roofer something for the service they provided, Your Honor. And the homeowner wants to use part of the value of the home to pay the roofer? They'd have to have – that would be another – I would have to be paid first as the mortgagor if I had a first lien position. And then I'm the roofer, and I come to you and say your home is worth $2 now because I preserved it. You owe me something for the benefit that you've received by preserving the value of that house. And I would say that the homeowner is the one who benefited. He was the one residing in that house. But you received benefit also because now when you foreclose on that property or you take that house back, it is of much greater value than it would have been if the roofer had not interceded and done the work. So why is Mr. Gallo not – or do you disagree that the roofer is just a good Samaritan and – No, I would say that if the roofer, with notice of my rights, took it upon him, her, itself to do the work, then they did assume a risk in that unless they got my assent. Well, how about they told you about it? They said, hey, just like Mr. Gallo did, he said, I'm going to be doing this. You have notice of that, and you just stand by and let him put the roof on and then say, no, I don't have to pay for it. I think it would be the – And I don't mean to put you on the spot, but you see the analogy I'm trying to draw here. I think in this case it would be that the mortgagor was already defaulting, and if you came to me and said, hey, I'm going to start doing this work and then I'm going to subsume your first mortgage, even though the gentleman in this case or the company isn't paying you, and then I said, I need to get my ducks in a row and I need to start in the judicial proceeding of a foreclosure, that's what we did. Are you suggesting that it makes a difference whether or not the debtor is in default when the assignment is made? Your Honor, I'm suggesting that it makes a difference if the assignee has notice, full notice, of a prior perfected secured creditor and does not take it upon him, her, itself to get their assent to the services. If they don't do that and they just start providing services under the UCC, since they're defined as a lien creditor, they assume the risk that they – there may not be enough funds for the services they're providing a debtor. Well, then maybe you should give the $40,000 back because they didn't do any service for you while you knew that that service was being rendered for you and only for you. There were no other secured creditors in this particular situation. You were it. So you're the only one who's going to benefit. And you accepted – your client accepted $40,000 and another $25,000 by the work of GAL. Our perfected secured interest continues even after liquidation. If some person was to take that, then, in that collateral, they'd convert it and they'd be subject to conversion. In addition, the value that Mr. Gallo is telling the court is that, I know I was only going to benefit them. I did not get any assent to this. And, really, the only thing, since they were the only ones who were going to be benefited on doing, is I'm going to usurp their first lien priority here, even though the UCC states expressly what I am and the priority that I have. It sounds to me, and tell me if I'm right, that your argument is that if you are a secured creditor under the UCC, then you are not obligated to pay any compensation or reimbursement to any assentee who gives you more than what your secured interest is. Or, pardon me, anything less or up to what your secured interest is. I'll ask it a different way. There appears, at least in my mind, to be a conflict between common law assignments for the benefit of creditors and the UCC, because it seems to me the way you're arguing this, this assentee is going to get nothing from your secured creditor. No matter what he does, under your determination or your interpretation, as long as your secured creditor has not been fully compensated to 100 percent of what his secured interest is, the assentee gets nothing. Is that correct? I would suggest that is the priority that the UCC does dictate. So the UCC and common law assignments, for purposes of the common law assignment, supposedly entitling the assentee to some sort of compensation, has no application under the UCC when a secured creditor is involved. I'm suggesting that, as well as in my brief demonstrating to the court, that that was a case decided and the power used for appointment, for supervision, for the value, was court supervised as dictated by our legislature. And the legislature has since changed that, given the conflict of that common law Holden decision with the UCC and the priority provisions contained therein. Can I ask you, too, what is the purpose of an assignee for the benefit of creditors? What is their role in the grander scheme of things? Their role is to provide a service to a party that agrees to accept the services. For what purpose? Isn't it to help you get your debt paid? I would suggest it is, unless they knew there was no way the debt would ever be paid. Let me ask you this then. If I'm in the assignee business and I want to be an assignee, how would I know that there's not enough money to go around until I'm engaged and have at least some minimal, let's say, time to review the status of affairs and I realize, geez, this secured debtor here is owed $10 and this estate in total is $5. There's no way everybody's going to get paid. But haven't I incurred some obligation for compensation just to figure that out? Okay. And if they – I guess what I'm driving at is if we accept your position, why would anyone ever want to be an assignee for the benefit of creditors? I mean, as soon as I realize, oh, there's a secured creditor here, you know what, I'm never going to get paid, so I'm not going to do this. An assignee for the benefit of creditors would have notice of the UCC and I would hope that if they were going to engage in a transaction where they thought there was risk, much like the bank does when they loan money, that they would go to the party they believe they would be benefiting and they would ask for their assent to the services they planned on providing. But the common law doesn't require that. The common law simply requires notice to those parties. So why would they go beyond because the UCC doesn't require that they get assent either. Nothing requires assent unless you can point me to some section that says the creditors must agree. The UCC does provide notice of who they are and where they would take – of who they are as lien creditors, and as a result, notice of where they would take if they didn't enter into a contract with the perfected secured creditor. So your bottom line is saying the assignee must go to the secured creditor and say, just so you know, John Doe over here has engaged me to be the assignee for the benefit of all creditors. You're the secured creditor. Is it okay with you that I do that? And the bank has to – in this case, the bank would have to say yes or no. As opposed to you're put on notice. I send you a letter. I am going to act as an assignee for the benefit of all creditors here. Do you have an objection to that? You sit silent. I guess where – if you – respectfully, if you can point to something that says I have to get your consent or I put you on notice and until and unless I receive your notification to me to stop, I'm entitled to compensation. My suggestion is the UCC tells the assignee, you're on notice of where exactly you stand. The financial statements, et cetera, put the assignee on notice of exactly where he, she, it stands and that the UCC states that for any creditor out there, this is how it works. If you want to assume that risk, you do it to your benefit or detriment. Even if – In that analysis, wouldn't – if the assignee is a lean creditor, wouldn't the assignee then necessarily always take last even after all the unsecured creditors because theoretically, they're last in time? No. The way I believe provision 9-317 is at the time of the assignment, they are created into a lean creditor. Right. And at that time, if there's any unsecures that are out there or come, they would take before those unsecures. And you're basing that on a clause in the UCC? Yes, ma'am. So then not only does the UCC say that secured creditors take first, but it says the assignee is a lean creditor and takes ahead of all other lean creditors. It says, I believe, that the specific provision, Your Honor, states that under 5-9-13, interests that take priority over or take free of security interests or agricultural and conflicting security interests – and then it goes on to give exceptions. One of the exceptions is Section 322, where the priority between a perfected, secured interest holder would take over lean claiming. But other than that, it would give priority to a lean creditor in this section, Your Honor. So if I understand you right, consent or withdrawal of consent is really not the dispositive issue. You're saying whether the bank – anything short of an overt consent to engage the assignee doesn't really matter because you take behind secured creditors no matter what, unless I specifically, as a secured creditor, agree to your services. I'm saying because of the way the UCC sets up, it, in my interpretation, demonstrates that the UCC and our legislature is making a determination that the services provided, unless there's a separate contract, are provided to the debtor. The debtor is receiving the value so that it can best provide monies to creditors. Right. And what is the debtor going to pay that debt with? The debtor would pay – that's between the debtor and the assignee. When there's an assignment, does the debtor assign 100 percent of all the debtor's assets or can they assign less than 100 percent? I believe they have to assign 100 percent of all the assets, Your Honor. So, in response to Justice Jorgensen's question, they've assigned all their assets and now they have nothing to pay the assignee with other than prayers and ritualistic signs of appreciation? If they provided services and there was then enough, they would take, though, before unsecured creditors. That's a big if, isn't there, especially when there is supposedly – they've been put on notice that there's a UCC secured creditor. Now they're not only supposed to find out that there's – whether or not there's a secured creditor, but then they also, if they are, quote-unquote, being less than speculative, they need to find out the amount of the security. I believe they are like any other creditor who would start engaging or providing services or providing materials with full knowledge that there's another perfected, secured creditor who already has priority over those same assets. Do you think the UCC or the legislature in any way, shape, or form has abrogated the concept of unjust enrichment for quantum merit in this situation? In this situation, I believe for there to be an equitable remedy that would apply, it would throw out the provision and would ignore that the party assumed the risk with full notice of the prior obligations. So you're saying, I think, at least the way I'm interpreting it, that the – your interpretation does abrogate quantum merit and unjust enrichment because you just said they're put on notice, they take the risk, and therefore they're not entitled to unjust enrichment for quantum merit, correct? They'd be entitled to it against the debtor. But the debtor doesn't have any money. And they're not – it's not called an assignment for the benefit of the debtor. It's called an assignment for the benefit of the creditors. I do understand that. I would suggest the way that the priority determination sets up, though, that any assignee can just usurp perfected, secured creditors once they start any work. And I don't think the UCC and its priority determinations – Isn't that why they're required to give notice? For example, as soon as he gave notice, Gallo gives notice to the bank. The bank says, you know, we really don't want your services. End of discussion. They then take ahead of that, ahead of the assignee. The code specifically says as soon as the assignment's created that there's a position that party does have. And that's below your client. Below a perfected, secured creditor, yes, Your Honor. So then what would be the – so the only purpose of the consent that you argued earlier would be to do what? Let's say your client said, yeah, that's great, go ahead and do that. He still, under the UCC, would take after your client. They would have a separate contract outside of the provisions of the UCC. But you said that the assignee only works for the debtor. They would have engaged in a contract with the understanding that the services would be provided to him. How could an assignee serve two masters like that? Couldn't. Wouldn't that be an inherent conflict to have both a contract with the bank and Unique Marble here? Let me think about that for a minute because, I mean, these – it's a very difficult line to draw here. And – Any more questions? No, that's time. I think time is up, correct? Do you have any final comment that you want to leave us with? Your Honor, I think my – I did have a couple, but I guess my bottom line is I think in this case, the suggestion that an assignee is somehow a trustee like the Bankruptcy Code suggests is an error. It's expressly provided what an assignee for the benefit of creditors is and expressly provides where they take. Under the UCC. Thank you. Thank you, Your Honor. Ms. Nienhuis? Thank you, Your Honor. Just a few final thoughts. An assignee for the benefit of creditors is a trustee. The agreement that's entered into between the assignee and the debtor is a trust agreement. And that person becomes a fiduciary for the benefit of the creditors who are hopefully going to get paid out of the liquidated assets. And in doing so, that that person cannot be turned into a creditor who is now going to have a conflict with the very people he or she is trying to protect. And to interpret section 902 sub 52 as to making not just what's not being brought out here, it's not just an assignee. We're talking about bankruptcy trustees are included in that provision and receivers as well. Turning those fiduciaries into competing creditors is completely contrary to what that statute is meant to do. The statute is not meant to make their jobs harder or to see that they don't get paid. How would you suggest that we interpret common law assignments and the UCC in paramaterial? Your Honor, I believe they can exist harmoniously. The UCC does establish that secure creditors who are properly perfected should get paid out of the assets, the collateral that they are entitled to get. However, in assignments for the benefit of creditors as creatures of common law, respect properly perfected secured claims. However, if you have a valid assignment, the common law of Illinois says you've provided notice to creditors, such as happened in this case, and you do what you're supposed to do, you perform your fiduciary duties, you're entitled to a reasonable, legitimate compensation for your efforts. The Hooven case is particularly on point because in that case, the Supreme Court said to the secured creditors who were saying, hey, wait a minute, nobody should get paid fees here until we get paid in full. The court said, uh-uh, this was a valid assignment. The asset need did a good job, and therefore, those reasonable, legitimate fees of the liquidation of those assets should get paid ahead of the secured claims. And if you had not wanted the asset need to do that job, you could have retrieved your collateral at any time and taken over the liquidation on your own. That's exactly what our position is here. First Bank was given appropriate notice of a valid assignment under Illinois common law. They chose to wait until April of 09 after Mr. Gallagher... But he says they started within 30 days. I'm sorry, started within... He said, I don't want to put words in counsel's mouth, but he said we started the process to retrieve our collateral within 30 days. So why shouldn't, if there are any fees at all, why not just the first 30 days? I'm glad you raised that, Your Honor, because the initiation of the judicial proceedings apparently did begin, but no notice of them was provided to Mr. Gallagher. The first opportunity Mr. Gallagher had any indication that the bank was pursuing the corporate entity was the time that they found out about this citation to discover assets against the corporation. The corporate principal, Mr. Hahn, we were, Mr. Gallagher was aware, was being pursued, but at no time was he aware that the corporation was being pursued. Quite frankly, if that had occurred, I think there would have been some conversations that went on to ensure that Mr. Gallagher's services were still wanted by the bank. Because a point of fact, he was providing, was paying money to the bank after he was liquidating those assets. So it came as somewhat of a surprise that those judicial proceedings had been initiated, didn't find out about it until April. And that was truly when services, as far as the S&E was concerned, were cut off and formally said, do you want us to continue? The bank said no, and the bank took over the final auction of the remaining inventory of the company. If there's no other questions, I appreciate your time this morning. Thank you. Thank you. The case will be taken under advisement. Decision rendered at that time.